This case presents a situation which we frequently encounter. A claimant suffers from both a physical impairment and a mental or mental health impairment. Charles D. Green, Sr., cannot physically perform his former job, but is physically capable of sedentary employment. The question for resolution before the Industrial Commission of Ohio then becomes whether or not he can be retrained and acquire the skills necessary for new, sedentary employment.
The psychological reports indicate that Mr. Green is capable of performing in new job settings. However, the reports do not address the effect of his mental or mental health impairment on his ability to learn the new skills required to perform the new job itself.
Because this ability to acquire new job skills is key to a determination of whether or not Mr. Green should receive PTD compensation, I would vacate the prior order and grant a limited writ compelling the commission to specifically address the effect of Mr. Green's mental and mental health conditions upon his ability to acquire the skills for him to perform the few jobs of which he is physically capable. Since the majority of this panel grants no relief, I respectfully dissent.
 APPENDIX A IN MANDAMUS
Relator, Charles D. Green, Sr., filed this original action asking the court to compel respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that complies with State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
1. Charles D. Green, Sr., ("claimant") sustained two industrial accidents. His 1969 workers' compensation claim was allowed for bilateral knee injuries. The 1976 claim was allowed for torn back muscles, depressive neurosis, lumbar radiculopathy, and herniated lumbar disc. A psychological condition was additionally allowed.
2. In September 2000, claimant filed a PTD application with medical evidence in support. He indicated that he was fifty-two years old, attended school through the tenth grade when he quit to begin working, could perform basic math, and could read and write although not well. He listed three prior jobs: corrections guard, pottery kiln burner, and materials handler.
3. In December 2000, claimant was examined in regard to his physical condition by James Rutherford, M.D., who concluded that claimant could perform sedentary work that allowed some freedom to sit or stand, as he could not do the "prolonged" sitting or standing required for "production line activity." Dr. Rutherford also found that claimant could not crouch, stoop, bend, kneel, or climb.
4. In December 2000, claimant was examined by Michael Murphy, Ph.D., in regard to the allowed psychological condition. Dr. Murphy found that the psychological condition was mild and would not prevent claimant from performing his former position of employment or other sustained remunerative employment.
5. In February 2001, an employability assessment was provided by Jeffrey Berman, who found that claimant's age was not a significantly limiting factor. He observed that claimant's education and reported limitations on reading "may" affect his "immediate" access to employment. In regard to work history, Mr. Berman opined that the work history did not demonstrate adaptability to a clerical job. However, using the medical/functional limitations and work history to conduct a transferable-skills analysis, Mr. Berman found thirty-seven possible options for employment. However, he then eliminated thirty-five of those due to Dr. Rutherford's restriction against sitting or standing for long periods. Mr. Berman then found that claimant could perform the remaining jobs. However, he cautioned that the ability to perform these jobs would depend on requirements set by the employer for pace and productivity.
6. In March 2001, a hearing was held before a staff hearing officer, who denied PTD compensation:
 The Staff Hearing Officer relies upon the persuasive reports * * * prepared by Industrial Commission Orthopedic Medical Specialist Dr. Rutherford. The Doctor supports the conclusion that the allowed physical conditions do not prevent the claimant from engaging in at least certain types of sustained remunerative employment.
 The Staff Hearing Officer relies upon the persuasive reports * * * prepared by * * * Dr. Murphy. Dr. Murphy opined that the allowed psychological conditions do not prevent the claimant even from returning to his former positions of employment. Nor do they prevent the claimant from engaging in any other type of sustained remunerative employment.
 The Staff Hearing Officer notes the Employability Assessment Report dated 2-2-01; and prepared by Industrial Com-mission Vocational expert Mr. Berman. He supports the conclusion that based on the persuasive reports of Dr. Rutherford and Dr. Murphy that the claimant retains the residual functional capacities to perform sustained remuner-ative employment consistent with certain job titles.
 The job titles that were identified by vocational expert Mr. Berman as being current employment options for the claimant included: gold burnisher; and hand painter.
 The Staff Hearing Officer agrees. The residual functional capacities as set forth in the above persuasive medical reports of Dr. Rutherford clearly would not physically prevent the claimant from engaging in sustained remunerative employment consistent with the job titles identified by the vocational exp[e]rt Mr. Berman as being current employment options.
 The Claimant indicated at hearing that he is currently approximately 52 years of age. The Staff Hearing Officer finds that the claimant's age is overall viewed as a positive vocational asset. Vocational expert Mr. Berman notes that the claimant's age alone is not a significantly limiting factor in accessing employment.
 The Staff Hearing Officer again agrees. The claimant's age in and of itself clearly would not prevent the claimant from obtaining and performing sustained remunerative employ-ment consistent with the unskilled, entry-level jobs identified by the vocational expert Mr. Berman as being current employment options. This is even truer when one considers that the claimant last worked steadily in 1976, when the claimant was only approximately 28 years of age.
 The Claimant indicated at hearing that he has completed approximately the 10th Grade level of education. The Staff Hearing Officer finds that the Claimant's level of education is overall viewed as a neutral vocational factor. The claimant's 10th grade level of education was sufficient to permit the claimant to obtain and to learn how to successfully perform even semi-skilled types of employment in the past. This demonstrates to the Staff Hearing Officer that the claimant certainly retains the intellectual ability to successfully obtain and perform the unskilled, entry-level types of sustained remunerative employment identified by vocational expert Mr. Berman as being current employment options for the claimant.
 The claimant's prior work history was identified as including the following: kiln burner; material handler; gas station worker; custodian; and corrections guard * * *.
 Vocational expert Mr. Berman notes that the claimant's prior work history included semi-skilled levels of employment. The vocational expert further noted that the work temperaments demonstrated by the claimant's work history included the ability to perform repetitive work; perform under stress; deal with people; and to make judgments and decisions.
 The Staff Hearing Officer again agrees. The claimant's prior work history is overall viewed by the Staff Hearing Officer as being a positive vocational asset. The claimant's ability to learn and to successfully perform semi-skilled types of employment in the past, including the above demonstrated work temperaments, leave the Staff Hearing Officer to conclude that the claimant certainly retains the ability to successfully obtain and perform the unskilled, entry-level types of sustained remunerative employment that were identified by vocational expert Mr. Berman as being current employment options. In addition, the Staff Hearing Officer concludes that the claimant would be able to perform other entry-level, unskilled sedentary types of sustained remuner-ative employment such as a surveillance security monitor. The claimant successfully performed work in the past as a prison guard for the Ohio State Penitentiary.
 * * * [T]he Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with the job titles identified by vocational expert Mr. Berman as being current employment options; as well as being a surveillance security monitor. Therefore the claimant is not Permanently and Totally Disabled.
Conclusions of Law:
Claimant contends that the commission abused its discretion in denying PTD. Specifically, claimant argues that the commission, in concluding that claimant could perform "sustained remunerative employment consistent with the job titles identified by" Mr. Berman, had a duty to discuss all the potential difficulties that Mr. Berman identified in his report. Second, claimant argues that the commission failed to provide an adequate explanation of its belief that claimant's background as a corrections officer would facilitate employment as a surveillance system monitor.
Numerous judicial decisions set forth the principles guiding this court's review of PTD orders, including Stephenson, supra; State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373; and Noll, supra. In addition, the magistrate notes that the commission, in a denial of PTD compensation, has no duty to list specific occupations that claimant can perform. State ex rel. Mann v. Indus. Comm. (1998),80 Ohio St.3d 656. However, when the commission chooses to make any specific findings, those findings are subject to review for an abuse of discretion. Last, it is well established that no vocational expert's evaluation is conclusively binding on the commission, which may reject all or part of any vocational assessment. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266; State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139.
As to the first assignment of error, the magistrate concludes that the commission is not required as a matter of law to discuss every potential strength and weakness identified by a vocational expert. In accepting a consultant's conclusion, the commission need not discuss every potential advantage or problem area identified in the report. The law is well established that the commission is required to cite only those items on which it relies and is not required to identify items that it does not adopt, nor is the commission required to explain why it found an opinion unpersuasive. E.g., State ex rel. Bell v. Indus. Comm. (1995),72 Ohio St.3d 575.
Thus, the commission was not required to accept any or all of Mr. Berman's opinions. In its order, the commission did not state overall reliance on the report but identified certain portions it found persuasive, which was within its discretion. See, Jackson; Ewart; Bell, supra. The commission, in concluding that claimant could perform work "consistent with" the jobs identified by Mr. Berman, was not required to identify every qualification or potential difficulty identified by Mr. Berman in his report, including his comment that some employers might have productivity requirements that claimant could not meet.
In his report, Mr. Berman explained the process of reaching his ultimate opinion as to job options. When he found that a restriction precluded job options, he said so. However, when he believed that a factor might present a difficulty but did not preclude employment, he noted that factor and alerted the commission to the potential difficulty. Mr. Berman ultimately chose to list job options; he did not opine that claimant was unemploy-able. He left it up to the commission to decide whether it would rely on his identification of job options or on the potential for difficulties.
In its order, the commission found that claimant could perform work "consistent with" the job titles cited by Mr. Berman. It was not obliged to identify or discuss the occupational opinions it rejected or to which it gave little weight. By citing the evidence on which it relied and providing a brief explanation of its denial of PTD compensation, the commission satisfied its obligations under Noll. The order does not present a situation where the commission rejected part of a vocational assessment that was crucial to supporting the vocational opinion on which the commission relied, thus creating an inconsistency. Here, the commission's findings and conclusions do not create an inconsistency or ambiguity that required resolution in a more detailed discussion.
As to the second issue, claimant challenges the commission's view that claimant's work history as a corrections guard would assist him in working as a surveillance system monitor. The magistrate finds no abuse of discretion. This is not an order in which the commission stated the existence of "transferable skills" from the "work history" without identifying the skills it found to exist. Cf. State ex rel. Haddix v. Indus. Comm. (1994), 70 Ohio St.3d 59; State ex rel. Bruner v. Indus. Comm. (1997), 77 Ohio St.3d 243. Here, the commission found that claimant was capable of learning an unskilled, entry-level job. It then indicated its belief that past work as a prison guard would give a worker some familiarity with security matters. This inference does not amount to an abuse of discretion that warrants a writ of mandamus. State ex rel. King v. Trimble (1996), 77 Ohio St.3d 58, 63 (stating that although the evidence was "not particularly compelling to us," the court would not substitute its judgment for the commission's); State ex rel. Mobley v. Indus. Comm. (1997), 78 Ohio St.3d 579, 583-584 (concluding that, where a report vaguely described past sales work, the evidence was sufficient to permit the inference that claimant showed communication ability).
In summary, the commission cited some evidence to support its conclusion that claimant was not precluded from performing all sustained remunerative work, and it provided a brief but adequate explanation of its rationale. Accordingly, the magistrate concludes that claimant has not demonstrated an abuse of discretion and recommends that the court deny the requested writ.